UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VONNIE MARIE RISSER,           :
                               :
        Plaintiff              :       CIVIL NO. 4:11-CV-01173
                               :
     vs.                       :       (Judge Conaboy)
                               :
MICHAEL J. ASTRUE,             :
COMMISSIONER OF SOCIAL         :
SECURITY,                      :
                               :
        Defendant              :

## MEMORANDUM

## BACKGROUND

        The above-captioned action is one seeking review of a
decision of the Commissioner of Social Security ("Commissioner")
denying Plaintiff Vonnie Marie Risser's claim for social security
disability insurance benefits and supplemental security income
benefits.

        Disability insurance benefits are paid to an individual
if that individual is disabled and "insured," that is, the
individual has worked long enough and paid social security taxes.
The last date that a claimant meets the requirements of being
insured is commonly referred to as the "date last insured."  It is
undisputed that Risser meets the insured status requirements of
the Social Security Act through December 31, 2012. Tr. 12, 14 and
154.[1]

_____

1.  References to "Tr.__" are to pages of the administrative
record filed by the Defendant as part of his Answer on August 17,
2011.

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes).  It is designed to help aged, blind or other disabled individuals who have little or no income.

Risser, who was born in the United States on January 30, 1975, graduated from high school in 1993 and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 125, 165, 172 and 178.  During her elementary and secondary schooling, she attended regular education classes. Tr. 172.  After graduating from high school, Risser obtained a commercial driver's license. Id.  Risser held several jobs which can be considered past relevant employment.[2]  Risser has an employment history of unskilled to skilled, light to heavy work[3] as a lingerie department manager at a Boscov's,

2.  Past relevant employment in the present case means work performed by Risser during the 15 years prior to the date her claim for disability benefits was adjudicated by the Commissioner.  20 C.F.R. §§ 404.1560 and 404.1565.

3.  The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

(a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) *Light work*.  Light work involves lifting no more
(continued...)

photographer in the portrait studio of a Walmart and a Kmart,

cashier at a Turkey Hill convenience store, cashier and stock

person at a Walmart, and bus driver. Tr. 50-51.

Records of the Social Security Administration reveal

that Risser had earnings in the years 1989 through 2008 as

follows:

|  |  |
|---|---|
| 1989 | $  531.30 |
| 1990 | 966.15 |
| 1991 | 3480.74 |
| 1992 | 4880.49 |
| 1993 | 8229.30 |
| 1994 | 13931.90 |

---

3.   (...continued)
than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds.  Even
though the weight lifted may be very little, a job is
in this category when it requires a good deal of
walking or standing, or when it involves sitting most
of the time with some pushing and pulling of arm or leg
controls.  To be considered capable of performing a
full or wide range of light work, you must have the
ability to do substantially all of these activities.
If someone can do light work, we determine that he or
she can also do sedentary work, unless there are
additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time.

(c) *Medium work*.  Medium work involves lifting no more
than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds.  If
someone can do medium work, we determine that he or she
can do sedentary and light work.

(d) *Heavy work*.  Heavy work involves lifting no more
than 100 pounds at a time with frequent lifting or
carrying of objects weighing up to 50 pounds. If
someone can do heavy work, we determine that he or she
can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

| | |
|---|---|
| 1995 | 13568.26 |
| 1996 | 13817.07 |
| 1997 | 7981.72 |
| 1998 | 4074.92 |
| 1999 | 5662.24 |
| 2000 | 9554.85 |
| 2001 | 8747.39 |
| 2002 | 7680.13 |
| 2003 | 9541.06 |
| 2004 | 15247.49 |
| 2005 | 5342.77 |
| 2006 | 4055.68 |
| 2007 | 14067.97 |
| 2008 | 2989.50 |

Tr. 137.  Risser's total earnings from 1989 through 2008 were $154,350.93.  Id.

Risser claims that she became disabled on June 1, 2008, because of several physical impairments, including systemic lupus erythematosus (SLE) which is "a long-term autoimmune disorder[4]

___

4.  "An autoimmune disorder is a condition that occurs when the immune system mistakenly attacks and destroys healthy body tissue. There are more than 80 different types of autoimmune disorders. . . Normally the immune system's white blood cells helps protect the body from harmful substances, called antigens. Examples of antigens include bacteria, viruses, toxins, cancer cells, and blood or tissues from another person or species. The immune system produces antibodies that destroy these harmful substances.

In patients with an autoimmune disorder, the immune system can't tell the difference between healthy body tissue and antigens. The result is an immune response that destroys normal body tissues. The response is a hypersensitivity reaction similar to the response in allergic conditions.

In allergies, the immune system reacts to an outside substance that it normally would ignore. With autoimmune disorders, the immune system reacts to normal body tissue that it would normally ignore." Autoimmune disorders, MedlinePlus, U.S. National Library of Medicine, National Institutes of Health,  http://www.nlm.
(continued...)

that may affect the skin, joints, kidneys, brain and other organs."[5]  Symptoms of SLE include joint pain and swelling, chest pain, fatigue, fever with no other cause, general discomfort, uneasiness or ill feeling (malaise), headaches, numbness, abdominal pain, and skin discoloration and rash.[6]

In a document filed with the Social Security Administration Risser stated as follows: "My hands and feet swell and my joint[s] just tighten up and I am in pain.  When my hands swell I am unable to do things with my hands - I can't ben[d] them enough to do simple things that most people take for granted.  The lup[u]s causes me to be tired. . .  I have had migraines since I was a teenager, since I got lup[u]s those headache[s] have become stronger, I have passed out." Tr. 166.

---

4.  (...continued)
nih.gov/medlineplus/ency/article/000816.htm (last visited June 21, 2010). Organs and tissue impacted by autoimmune disorders include blood vessels, connective tissue, joints, muscles and skin. Id.

5.  Systemic lupus erythematosus, PubMed Health, A.D.A.M. Medical Encyclopedia,U.S. National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001471/ (Last accessed August 23, 20120).

6.  Id.; several medical records indicate that Risser suffered from Raynaud's phenomenon. Tr. 352 and 356. Raynaud's phenomenon is defined as "intermittent bilateral ischemia of the fingers, toes, and sometimes ears and nose, with severe pallor and often paresthesias and pain, usually brought on by cold or emotional stimuli and relieved by heat; it is usually due to an underlying disease or anatomical abnormality." Dorland's Illustrated Medical Dictionary, 1430 (32nd Ed. 2012).

After the alleged disability onset date of June 1, 2008, Risser continued to work part-time until November 26, 2008. Id. Risser stated that in June, 2008, she "cut [her] hours to 1 day per month" and "[a]t the end of November [she] was actually released as an employee." Id.  Risser further states that "[w]hen [she] came in one day [she] primarily just did cash register, coffee, and stock[ed] cigarettes. [She] did not have to do any heavy stocking or lifting. [She] did not have to sweep or clean, and [she] did not have to work in the freezer." Id.  Risser has not worked since November 26, 2008. Id.  Risser contends that she receives substantial assistance from family members and friends who take care of her children and perform household chores and duties. Tr. 175-182.  Several individuals submitted statements indicating that they assist Risser with housekeeping and help take care of Risser's children. Tr. 212-217.

On November 14, 2008, Risser protectively filed[7] an application for disability insurance benefits and an application for supplemental security income benefits. Tr. 12, 64-65, 121-133, 135 and 154.  On February 18, 2009, the Bureau of Disability

---

7.  Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

Determination[8] denied Risser's applications. Tr. 66-75.  On March 10, 2009, Risser requested a hearing before an administrative law judge. Tr. 12 and 76.  Approximately 11 months later, a hearing was held on February 18, 2010, before an administrative law judge. Tr. 20-62.  On May 19, 2010, the administrative law judge issued a decision denying Risser's applications. Tr. 12-19.  The Appeals Council denied Risser's request for review and, subsequently, Risser filed a complaint in this court.  The appeal[9] became ripe for disposition on November 10, 2011, when Risser filed a reply brief.

Under 42 U.S.C. § 405(g) and relevant case law, the court is limited to reviewing the administrative record to determine whether the decision of the Commissioner is supported by substantial evidence. Counsel for the parties are familiar with the five-step sequential evaluation process[10] that the

---

8.  The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for disability insurance benefits and supplemental security income benefits on behalf of the Social Security Administration. Tr. 67 and 72.

9.  Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

10.  The Commissioner utilizes a five-step process in evaluating disability insurance benefits and supplemental security income claims.  See 20 C.F.R. §§ 404.1520 and 416.920; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial
(continued...)

Commissioner utilizes and the substantial evidence standard of review.[11]  For the reasons set forth below we will vacate the decision of Commissioner denying Risser benefits and remand the case to the Commissioner for further proceedings.

_____

10.  (...continued)
gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.

11.  Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008);  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213.  In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).
       Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason, 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

A review of the record reveals clear error during the administrative proceedings.[12]  We will set forth a brief discussion of the basis for our decision.

**DISCUSSION**

The administrative law judge went through the 5-step sequential evaluation process and determined that Risser had the ability to engage in a limited range of sedentary work and consequently she was not disabled.  Id.

At step two of the sequential evaluation process, the administrative law judge found that Risser had the following severe medically determinable impairments: systemic lupus erythematosus, fibromyalgia,[13] irritable bowel syndrome, plantar

---

12.  We have thoroughly reviewed the record which consists of 673 pages.

13.  Fibromyalgia is described by the American College of Rheumatology in pertinent part as follows:

> Fibromyalgia is an often misunderstood – even unrecognized – disorder that causes widespread muscle pain and tenderness which tends to come and go, and move about the body.  This common and chronic condition also can be associated with fatigue and sleep disturbances.
>
> Fast facts
>
> ● Fibromyalgia affects 2-4% of the population, predominantly women.
>
> ● Fibromyalgia is diagnosed based on patient symptoms and physical examination. There is no laboratory, radiographic, or other diagnostic test, but these can be used to exclude other conditions.

(continued...)

fasciitis,[14] and migraines. Tr. 14.  The administrative law judge

indicated that these impairments were "severe" because they

_____

13.  (...continued)
            *    *    *    *    *    *    *    *    *    *    *

            What is fibromyalgia?

            Fibromyalgia is defined by chronic widespread muscular
            pain and symptoms such as fatigue, sleep disturbance,
            stiffness, cognitive and memory problems, and symptoms
            of depression and anxiety. More localized pain
            conditions often occur in patients with fibromyalgia,
            including migraine or tension headaches,
            temporomandibular disorder, irritable bowel syndrome,
            gastroesophageal reflux disorder, irritable bladder,
            and pelvic pain syndrome. The symptoms of fibromyalgia
            and associated conditions can vary in intensity and
            wax and wane over time. Stress often worsens these
            symptoms.

            *    *    *    *    *    *    *    *    *    *    *

American College of Rheumatology, Practice Management,
Fibromyalgia, http://www.rheumatology.org/practice/clinical/
patients/diseases_and_conditions/fibromyalgia.asp (Last accessed
August 23, 2012). Also, "it is often the rheumatologist who makes
the diagnosis (and rules out other rheumatic diseases), but [the]
primary care physician can provide all the care and treatment for
fibromyalgia . . . ." Id.


14.  "The plantar fascia is a thick band of connective tissue
that originates at the heel bone and runs the entire length of
the sole. It helps maintain the arch system of the foot and plays
a role in your balance and phases of your gait. An injury to this
tissue, known as plantar fasciitis, can require physical therapy
. . . Plantar fasciitis is a painful inflamation . . . [and] is
usually found in only one foot. Bilateral plantar fasciitis, on
the other hand, is probably the result of a systemic arthritic
condition." Is a stationary bike good exercise when you have
plantar fascitis? Livesstrong.com, http://www.livestrong.com/
article/335125-is-a-stationary-bike-good-exercise-when-you-have-p
lantar-fasciitis/ (Last accessed August 23, 2012).

significantly limited Risser's ability to perform basic work activities.[15] Tr. 13.

At step three of the sequential evaluation process, the administrative law judge found that Risser did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. If Risser's severe medically determinable impairments met or equaled a listed impairment, she would have been considered disabled per se and awarded disability benefits. See Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000).

Risser argues that the administrative law judge's finding that her impairments did not meet or medically equal the criteria of a listed impairment was erroneous because it was not based on substantial evidence.  Risser also argues that the administrative law judge's residual functional capacity determination at step 4 of the sequential evaluation process was erroneous.  Because we find substantial merit in Risser's first

---

15.  An impairment is "severe" if it significantly limits an individuals ability to perform basic work activities.  20 C.F.R. §§ 404.1521 and 416.921.  Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual ability to work.  20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

argument relating to the step three analysis, we need not address

the administrative law judge's residual functional capacity

determination.[16]

At step three, the administrative law judge concluded,

inter alia, that Risser's SLE did not meet the requirements of

Listing 14.02 (Systemic lupus erythematosus).  In so finding the

administrative law judge stated in toto as follows:

> The claimant's lupus does not meet the requirements of
> Section 14.02 of the Listings, because she does not
> experience severe fatigue, fever, malaise, or
> involuntary weight loss, and she does not experience
> marked limitations in activities of daily living,
> marked limitations in maintaining social functioning,
> or marked limitations in completing tasks in a timely
> manner due to deficiencies in concentration, persistence
> or pace. In the claimant's case, she maintains a
> household with three children ages 4, 10, and 12. While
> she receives significant assistance from her husband and
> nieces at times the claimant's description of her own
> ability to maintain activities of daily living, function
> socially, or complete tasks in a timely manner does not
> describe a serious or marked limitation in any of those
> areas.

Tr. 15.  This statement by the administrative law judge lumps

together the two ways that a claimant can meet the criteria of

---

16.  However, it would be advisable for the Commissioner to give
further consideration to this issue on remand.

Listing 14.02[17] and is too vague and conclusory for this court to conduct meaningful review.

　　　　As stated, there are two ways to meet Listing 14.02.  We need only address the first. The first is by demonstrating that

---

17.  In order to meet Listing 14.02, Risser must demonstrate the criteria under either subsection A or subsection B.  Listing 14.02 states as follows:

> 14.02 *Systemic lupus erythematosus.* As described in 14.00D1. With:
>
> A. Involvement of two or more organs/body systems, with:
>
> 1. One of the organs/body systems involved to at least a moderate level of severity; and
>
> > 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> > **or**
>
> > B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> > 1. Limitation of activities of daily living.
>
> > 2. Limitation in maintaining social functioning.
>
> > 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpart P, app. 1 (emphasis added).

13

(1) the claimant's SLE involves two or more organ/body systems
where one of the organ/body systems is impacted to a moderate
level of severity and (2) there is present at least two of the
following constitutional signs or symptoms: (1) severe fatigue,
(2) severe fever, (3) severe malaise, or (4) severe involuntary
weight loss.  "Fatigue" in Listing 14.02 is defined as "a frequent
sense of exhaustion that results in significantly reduced physical
activity or mental function." Section 14.00C (Definitions), 20
C.F.R. pt. 404, subpart P, app. 1. "Malaise" is defined as
"frequent feelings of illness, bodily discomfort, or lack of well-
being that result in significantly reduced physical activity or
mental function." Id.  Furthermore, "severe" with respect to
Listing 14.02 has a special meaning.  It is defined as "medical
severity as used by the medical community. The term does not have
the same meaning as it does when we use it in connection with a
finding at the second step of the sequential evaluation
process.[.]" Id.

          The administrative law judge did not indicate whether
Risser's SLE involves two or more organ/body systems to a moderate
level of severity.  Consequently, we assume he conceded that that
requirement was met.  The administrative law judge focuses on the
requirement that the fatigue, fever, malaise or involuntary weight

loss be severe.[18]  The administrative law judge found that they were not. However, we cannot determine that he used the appropriate definition of "severe" when so finding. Furthermore, there is no opinion in the record from a physician stating that Risser's fatigue and malaise were not severe from a medical standpoint.

Risser's testimony as well as the medical records from Francis J. Gallagher, M.D.,  Risser's treating physician suggests that Risser suffered from fatigue and malaise.  Although Dr. Gallagher did not specifically state that Risser suffered from "severe" fatigue and malaise, the medical records of Dr. Gallagher's treatment of Risser suggest that the fatigue and malaise were severe.[19]  Tr. 352-369

---

18. Risser conceded that there was no severe weight loss and has not argued that she suffered from severe fever.

19. For example, treatment notes of Dr. Gallagher dated June 15, 2009, state in pertinent part as follows:

> Vonny was seen in the office today for followup of her systemic lupus. She has an[] additional medical history of migraine headaches, irritable bowel syndrome, recurrent cystitis and chronic sinusitis.  Her lupus is manifested by Raynaud's phenomenon, arthralgias, fatigue, skin rash, and atypical chest pain. . . She comes in for a sick visit. She has not been feeling well recently. She has multiple complaints today. She is having a lot of dizzy spells. She has numbness on the right side of her body, both the arm and the leg. She has been noting some short term memory loss. She is having pain in the right arm . . .The wrists have been
> (continued...)

Where a court cannot conduct meaningful review because the administrative law judge has failed to give an adequate explanation for the step three determination remand is appropriate. <u>See</u> <u>Burnett v. Commissioner of Social Sec. Admin.</u>, 220 F.3d at 119-120.  In this case, the administrative law judge failed to give an adequate explanation for his step three finding.

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence.  We will, therefore, pursuant to 42 U.S.C. § 405(g) vacate the decision of the Commissioner and remand for further

---

19.  (...continued)
   swollen . . . She has been complaining of increasing
   chest pain and tightness. . . .

   ASSESSMENT & PLAN:

   1.  Systemic lupus.  Vonny has a history of lupus with
   manifestations as described above.  She has a lot of
   complaints today. . . .

Tr. 352-353.

proceedings.[20]

        An appropriate order will be entered.

                                   S/Richard P. Conaboy
                                   RICHARD P. CONABOY
                                   United States District Judge

Dated: August 24, 2012

---

20.  We strongly recommend that the Commissioner obtain expert medical opinion as to whether or not Risser's impairments meet or medically equal a listed impairment.

17